## Modern Woodmen of America, etc., v. Taggart, Insurance Commissioner.

*Beneficial societies—Insolvency—License—Revocation by Insurance Commissioner—Act of May 20, 1921.*

The fact that a foreign fraternal beneficial society, which had been in business in Pennsylvania before the passage of the Act of May 20, 1921, P. L. 916, is not actuarially solvent in the sense that its entire assets, contingent and otherwise, are not equal to its contingent and matured liabilities does not authorize the Insurance Commissioner to revoke its license to transact business in this State because of its failure to comply with the provisions of the act, since that act does not require actuarial solvency to be shown, but only that the funds in its possession shall be equal to or in excess of its matured liabilities.

Appeal from decision of Insurance Commissioner revoking license of beneficial society. C. P. Dauphin Co., Com. Docket, 1926, No. 85.

*Snyder, Miller & Hull,* for plaintiff.

*William Y. C. Anderson,* Deputy Attorney-General, for defendant.

Fox, J., May 31, 1927.—This matter comes before us on an appeal by the petitioner from the decision of the Insurance Commissioner of the Commonwealth of Pennsylvania, thereby revoking the license of the petitioner, the Modern Woodmen of America (a fraternal beneficiary society) to transact business in this Commonwealth. Upon petition of the society, a rule was granted by this court upon the Insurance Commissioner to show cause why his action in revoking the license aforesaid should not be reviewed by this court and why his decision should not be declared null and void.

An answer to the rule has been filed which admits the facts as set forth in the petition relating to the action of the Commissioner, and, in substance, avers that the petitioner is legally insolvent within the meaning of the words as used in the Act of May 20, 1921, P. L. 916.

The only act of assembly pertaining to this matter is that of May 20, 1921, *supra,* which is an act pertaining to fraternal benefit societies. In section 20 thereof are set forth the causes for which the Insurance Commissioner may revoke the annual license of any foreign society, which are the following:

1. When a society has exceeded its power.
2. When it has failed to comply with any provisions of this act.
3. When it is conducting business fraudulently.

The contention of the Deputy Attorney-General is that the petitioner is guilty of the second of these reasons, in that it has been transacting business in this Commonwealth while it was not actuarially solvent; that is, the ratio of assets, contingent and otherwise, to contingent and matured liabilities is not at least 100 per cent., but, on the other hand, is very much less, and, therefore, it failed to comply with the provisions of the act respecting its solvency.

The parties agreed upon and filed a stipulation of facts, with the reservation, however, that either party could object at the time of the hearing to the relevancy and materiality of facts contained in the stipulation. By the sixth

stipulation of facts, it is agreed that the valuation report filed by the society with the Insurance Commissioner for the year 1925 shows that the ratio of contingent and actual assets to contingent and matured liabilities of the society was 55.60 per cent.

The contention of the Attorney-General is that the law requires such ratio to be not less than 100 per cent., which is actuarial solvency, and in not maintaining actuarial solvency, the society has failed to comply with the act.

The appellant or petitioner contends that the law does not so require, and that the Insurance Commissioner had no authority to revoke the petitioner's license for the reason he assigned.

The question, therefore, for our determination is: Does the act aforesaid require the petitioner to maintain 100 per cent. actuarial solvency?

At the hearing and argument, the Deputy Attorney-General objected to certain parts of the stipulated facts as not being relevant or material. We shall take up these objections in their order and dispose of them at this time.

The first objection is to that part of section 6, beginning in its 24th line with the words, "that said valuation reports, etc.," to the end of the section. Because of its length, we shall not quote the language objected to. We overrule the objection. We think it is relevant to show that the valuation report filed is not, and was not intended to be, a test of solvency, because it did not take into consideration all factors which bear upon the question of the solvency of the society. Exception noted for the respondent.

The next objection is to the whole of section 11. We overrule this objection. We think it is relevant to show that the assessment provision in the by-law is a practical means for insuring the legal solvency of the society, and it also shows this as a further asset. Exception noted for the respondent.

The next objection is to the whole of section 12. This objection is overruled. We think it is relevant, because it shows that upon withdrawals or lapses there can be no reduction of the assets, but, on the other hand, a reduction of the liabilities. All of which bears upon the solvency or insolvency of the society. Exception noted for respondent.

The Insurance Commissioner has revoked this license because, as he says, the society has failed to comply with a provision of this act, in that its valuation report shows that it is less than 100 per cent. actuarially solvent.

The petitioner is a foreign society and was transacting business long before, at the time of the passage of the act, and continuously since, in this State. There are distinctions drawn in the act between domestic societies organized after the passage of the act and those organized before its passage: See sections 12 and 13; between domestic and foreign societies, see sections 12 and 17; between foreign societies transacting business prior to the passage of the act and those admitted subsequent thereto, see sections 17, 18 and 19.

The sections of the act which specially throw light upon the question before us are 3, 17, 23 and 23 B. We have carefully considered these sections and nowhere can we find that the act requires the society to be 100 per cent. actuarially solvent, but, on the other hand, we think the proper construction of the act is that it need not be so.

The respondent contends that the third paragraph of section 17 is applicable to foreign societies which have been transacting business prior to the act as well as those desiring admission thereafter, and that both shall have the qualifications required of domestic societies organized under the said act, as set forth in section 12. We cannot agree with this. There is a clear distinction drawn in sections 18 and 19 between a foreign society now (at the time of the passage of the act) doing business in this Commonwealth and one

applying for admission. We think the legislature intended that a domestic society and a foreign society transacting business here prior to the passage of the act should respectively stand on a different basis from a domestic society incorporated and a foreign society admitted after the passage of the act. The third paragraph of section 17 does not relate to a foreign society which was here prior to, and at the time of, the passage of the act, and it is not required to comply with the provisions of section 12, which relate to domestic societies incorporated after the passage of the act. Only domestic societies organized under the act and foreign societies desiring admission to this Commonwealth, and being admitted for the first time, are compelled to comply with section 12. The petitioner is neither. It was admitted to the Commonwealth long ago. The receipt of an annual license year after year by a foreign society here transacting business is not an admission year after year; such a license after the first year is nothing more than a permit to remain and continue to transact its business. Its admission was when it first came into the State and transacted business therein. It is a renewal of its license; as said in section 16, referring to foreign societies transacting business in the State prior to the act: "The authority of such societies may thereafter be renewed annually . . . for such license or renewal. . . ." It is not surprising to us that the legislature should make such a distinction. Much reference was made by the Deputy Attorney-General at the argument and in his brief to the "New York Conference Bill." We do not have that bill in evidence; we do not know whether or not the legislature had it under consideration when it passed the act in question; perhaps it did. Be that as it may, we must take our act as the legislature has passed it and give to it its plain meaning and obvious construction. If the legislature enacts what may seem to us an unfair distinction, we cannot change it; that is for the legislature; it may do so if it sees fit.

It seems to us that, unless there is a qualification elsewhere in the act, and we find none, less than 100 per cent. actuarial solvency is indicated as permissible in section 3, in which it is recognized that there may be a condition of deficiency of assets to pay all matured claims, and provision is there made by special unlimited assessment, etc., for raising the required sum. If there was at the time, and all of the time, actuarial solvency, such proceeding would be unnecessary. In section 17 are set forth more fully than elsewhere the requisites of the foreign society so that it may have a license in the State, and nowhere therein is found the requirement of 100 per cent. actuarial solvency. In the 3rd paragraph thereof is drawn a distinction between foreign societies previously in the State and those applying for admission after the passage of the act by imposing on the latter the same requirements as are exacted of domestic societies incorporated under the act. Section 23 provides that the annual report be filed with the Insurance Commissioner, which report shall show the accrued liability under unpaid claims and such other information as the Commissioner may deem necessary to be proper exhibit of its business. The section also provides for the valuation report, which shall show the amount to be paid to members on the respective expectancies of life, less the amount to be paid in by the members, and the resulting balance. Most of the section relates to the method of valuation and composition of the report. Nowhere in it do we find that actuarial solvency must be shown, but, on the other hand, we have at the close of the section this significant language: "The valuation herein provided for shall not be considered or regarded as a test of the financial solvency of the society, but each society shall be held to be legally solvent so long as the funds in its possession are equal to or in excess of its

matured liabilities." This does not mean that the society is actuarially solvent. A matured liability, as defined in the first part of section 23, is an unpaid claim of which notice was received by the society at its home office before the end of the year and approved for payment before the filing of the report. No. 7 of the stipulated facts shows that, on Dec. 31, 1925, the society had funds belonging to it and in its possession in amount over $40,000,000 in excess of its matured liabilities; that the matured liabilities on Dec. 31, 1925, amounted to $2,537,909.58, and that they have not exceeded this amount.

We fail to find in the act the requirement of such solvency as contended for by the respondent, but from the facts, we do find that the petitioner stands the test as laid down by the act in that its funds in its possession are in excess of its matured liabilities, and, therefore, it is legally solvent. To be legally solvent is the requirement, and the act defines that term.

This seems to have been the construction of the act by the administrative officers since its passage to the time of this revocation, and that should be given proper regard. Such construction should not be disregarded unless it is clearly and obviously erroneous. We do not feel it necessary to cite authorities in support of this. Under such construction, the society was permitted to continue to transact business here after the passage of the act. It sent to its members its valuation reports as required by the act, showing that it was not actuarially solvent. Many other members have thereby been induced to join the society, to pay their dues and assessments, and now to give a different construction to the act would work a hardship on them. This should not be done unless it is clear that the former construction was erroneous. After a careful consideration of the act, we regard the latter construction of the administrative officer as wrong.

Wherefore, we are of the opinion that the Insurance Commissioner erred in revoking the license of the petitioner; that the order of revocation is void, and that the rule should be made absolute.

And now, May 31, 1927, the rule is made absolute.

From Homer L. Kreider, Harrisburg, Pa.